FILED

MAY 0 3 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

|  |  |
|---|---|
| BRIAN LYNN CAPPS;<br>ALEX GUERRERO;<br>CHRISTOPHER GUTIERREZ;<br>CHANDRADAT PERSAUD;<br>JESSIE RAMOS; and MIGUEL<br>GALARZA, on behalf of themselves and<br>all others similarly situated,<br><br>    *Plaintiffs.*<br><br>vs.<br><br>UNITED SERVICES AUTOMOBILE<br>ASSOCIATION; USAA GENERAL<br>INDEMNITY COMPANY; USAA<br>CASUALTY INSURANCE COMPANY;<br>And GARRISON PROPERTY AND<br>CAUSALTY INSURANCE COMPANY,<br><br>    *Defendants,* | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>SA24CA0455OG |

### COMPLAINT

Plaintiffs Brian Lynn Capps, Alex Gerrero, Christopher Gutierrez, Chandradat Persaud, Jessie Ramos, and Miguel Galarza bring this action on behalf of themselves and all others similarly situated against United Services Automobile Association ("USAA"); USAA General Indemnity Company ("USAA-GIC"); USAA Casualty Insurance Company ("USAA-CIC"); and Garrison Property and Casualty Insurance Company ("Garrison") (collectively "Defendants"). Plaintiffs allege the following based on personal knowledge, information and belief, and investigation of counsel.

## INTRODUCTION

1.      USAA advertises, promotes, and sells automobile, home, property, and other insurance products as exclusively available to those who qualify for "membership" in USAA through a direct or familial connection with the United States military or certain military-related government agencies. Upon proving a requisite military connection, USAA issues new customers a member number. So central is membership to USAA that its website prominently reads: "Member owned. Mission led. We're run by members, for members."[1] USAA aggressively promotes membership's importance and value, including most recently through a national television advertising campaign featuring former NFL star Rob Gronkowski.

2.      But for nearly two-thirds of USAA's customers, membership is a false, unfair, and deceptive promise that USAA has systematically breached. In truth, USAA reserves real membership and its concomitant benefits exclusively for customers from the officer class (in particular, commissioned and senior non-commissioned officers, officer candidates, and their unmarried widows). USAA secretly relegates all other customers—in particular, enlisted personnel and military family members—to nominal or "fake" member status.

3.      Real USAA members enjoy very real financial benefits, including:

a.   Annual allocations to each real member's account from USAA's unassigned policyholder surplus, which totaled $10,409,661,922 as of December 31, 2023. USAA pays these allocations out to real members in cash upon terminating membership. For 2022 alone, termination payments to real members totaled $350 million; and

_____

[1] https://www.usaa.com/membership/about?wa_ref=pub_global_membership, accessed May 1, 2024.

b. Annual distributions to each real member from USAA's unassigned policyholder surplus. In 2022 alone, annual distributions to real members totaled $343 million.

4.     Even though USAA secretly reserves membership to its officer class customers, USAA purports to qualify enlisted personnel and military family members for USAA membership. It also contractually promises them (real) membership in the policy form used in its most popular product (automobile insurance), issues them USAA member numbers, and consistently refers to them in direct and general communications as USAA members. Through these and similar unfair and deceptive tactics, enlisted personnel and military family members have been led to believe they are USAA members rather than second-class customers.

5.     In its advertising and general and direct communications, USAA assures enlisted personnel and military family members they are members while withholding information about their non-member status and actively misleading them to think they are USAA members with the same rights and privileges as real USAA members.

6.     To further this scheme and create the illusion of membership for all customers, USAA interacts with both real and nominal USAA members through the same advertising, online, telephonic, and mail channels, all of which are branded with USAA's name and logos.

7.     While officers receive their insurance contracts from USAA directly, USAA places its second-class customers with one of its three subsidiary insurance companies: Defendant USAA General Indemnity Company ("USAA-GIC"); Defendant USAA Casualty Insurance Company ("USAA-CIC"); and Defendant Garrison Property and Casualty Insurance Company ("Garrison"). The subsidiary insurance companies' value and profits flow directly into USAA and are then shared with real USAA Members (i.e., officers) through annual distributions from, and allocations of, unassigned policyholder surplus. By contrast, neither USAA nor its

subsidiary insurance companies allocate or distribute any policyholder surplus to nominal members (although USAA-CIC, in which the adult children of officers are placed, usually declares a modest dividend each year).

8.    The result of USAA's unfair, deceptive, and misleading practices and systematic breach of its contractual promise of membership is that Plaintiffs and those similarly situated have been and continue to be denied the benefits of USAA membership, including sharing in allocations of, and annual distributions from, USAA's unassigned policyholder surplus.

9.    Plaintiffs bring this class action on behalf of themselves and all others similarly situated, seeking monetary damages, permanent injunctive relief, and other relief on behalf of the proposed Classes.

## PARTIES

10.    Plaintiff Brian Lynn Capps is a citizen of the State of Texas, residing in Lindale, TX 75771. Mr. Capps served in the Army from approximately 2006 to 2019. He achieved the rank of Specialist at paygrade E-4 before separating from the Army. Mr. Capps purchased USAA automobile insurance from USAA for two separate periods. The first period ended in approximately 2013, and the second was from approximately 2019 through late 2023. During this time, USAA assigned Mr. Capps a unique USAA Member Number and placed Mr. Capps' insurance contracts with USAA-GIC. USAA issued the Texas Auto Policy that is part of Mr. Capps' automobile insurance contracts.

11.    Plaintiff Alex Guerrero is a citizen of the State of California, residing in Corona, CA 92878. Mr. Guerrero served in the Army from approximately 2004 to 2019. He achieved the rank of Staff Sergeant at a paygrade E-6 before separating from the Army. Mr. Guerrero has been continuously insured by USAA since 2004. He has purchased automobile, home, and personal

property insurance from USAA. USAA assigned Mr. Guerrero a unique USAA Member Number and placed Mr. Guerrero's insurance contracts with USAA-GIC. USAA issued the California Auto Policy that is part of Mr. Guerrero's automobile insurance contracts.

12.    Plaintiff Christopher Gutierrez is a citizen of the State of Texas, currently residing in Austin, TX 78254. Mr. Gutierrez is an adult family member of a USAA member. He purchased automobile insurance from USAA from 2010 through 2021. USAA assigned Mr. Gutierrez a unique USAA Member Number and placed Mr. Gutierrez's insurance contracts with USAA-CIC. USAA issued the Texas Auto Policy which is part of Mr. Gutierrez's automobile insurance contracts.

13.    Plaintiff Chandradat Persaud is a citizen of the State of Arizona, temporarily working and living abroad (in Kuwait on a contract basis), but maintaining a residence in and intending to return to El Mirage, AZ 85335 (where his wife and children continue to reside while he completes his contract). Mr. Persaud served in the Marines from approximately 2004 to 2018. He achieved the rank of Staff Sergent at a paygrade of E-6 before separating from the Marines. He has been continuously insured by USAA since 2004. He purchased automobile and renter's insurance from USAA. USAA assigned Mr. Persaud a unique USAA Member Number and placed Mr. Persaud's insurance contracts with Garrison. USAA issued the Arizona Auto Policy that is part of Mr. Persaud's automobile insurance contracts.

14.    Plaintiff Jessie Ramos is a citizen of the State of Illinois, residing in Chicago, IL 60623. Mr. Ramos served in the Army from approximately 2007 to 2012. He achieved the rank of Specialist at paygrade E-4 before separating from the Army. He purchased automobile insurance from USAA from approximately 2008 to 2019 and then again from approximately 2022 to present. USAA assigned Mr. Ramos a unique USAA Member Number and placed Mr.

Ramos' insurance contracts with USAA-GIC. USAA issued the Illinois Auto Policy that is part of Mr. Ramos' automobile insurance contracts.

15.     Miguel Galarza is a citizen of the State of New Jersey, residing in New Milford, NJ 07646. Mr. Galarza served in the Army starting in 2001 and in the National Guard starting in 2005. He had a break in service and then served at the rank of Staff Sergeant at paygrade E-6 until January of 2024, when he was promoted to the rank of Sergeant First Class. He has purchased automobile insurance from USAA since approximately 2013 as well as homeowners' insurance and umbrella insurance from USAA for some or all of that period.  USAA assigned Mr. Galarza a unique USAA Member Number and placed Mr. Galarza's insurance contracts with USAA-GIC. USAA issued the New Jersey Auto Policy that is part of Mr. Galarza's automobile insurance contracts.

16.     Defendant United Services Automobile Association ("USAA") is a citizen of the State of Texas, with its headquarters in San Antonio, Texas. It is a reciprocal interinsurance exchange.

17.     USAA places the insurance contracts of its nominal members in one of its stock subsidiaries, USAA-GIC, USAA-CIC, and Garrison (collectively, "the stock subsidiaries"), which are all under Defendant USAA's management and control. Defendant USAA owns 100% of the common stock of USAA-CIC and USAA-GIC. USAA-CIC owns 100% of the common stock of Garrison.

18.     Defendant USAA General Indemnity Company is a citizen of the State of Texas, with its headquarters in San Antonio, Texas. It is a stock insurance company.

19.     Defendant USAA Casualty Insurance Company is a citizen of the State of Texas, with its headquarters in San Antonio, Texas. It is a stock insurance company.

20.     Defendant Garrison Property and Casualty Insurance Company is a citizen of the State of Texas, with its headquarters in San Antonio, Texas. It is a stock insurance company.

## JURISDICTION AND VENUE

21.     This Court has personal jurisdiction over Defendants because they are all citizens of the State of Texas that have a common headquarters and principal place of business in the State of Texas.

22.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the proposed Classes is a citizen of a state different from that of Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (c) the proposed Classes each consist of more than 100 class members, and (d) none of the enumerated exceptions apply to this action.

23.     Venue is proper in the Western District of Texas under 28 U.S.C. §§ 1391(b)(1) and (2) because the Defendants have their headquarters and principal place of business in this District and a substantial part of the events and/or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### 1.  Membership in USAA

24.     United States Army Automobile Insurance Association was formed as a reciprocal interinsurance exchange in San Antonio, Texas on June 19, 1922. In 1924, the name was changed to United Services Automobile Association ("USAA").

25.     Originally, only active U.S. Army officers and warrant officers were eligible to purchase USAA insurance. During its first 45-years, USAA progressively expanded eligibility. By 1960, USAA's policyholders included active and former commissioned and warrant officers

of all branches of the U.S. military (including members of the Reserves and National Guard not on active duty) and U.S. Coast Guard, unmarried widows of former policyholders, Foreign Service Officers, and USAA employees.

26.    From its earliest days, USAA used the term "member" to describe its policyholders. Indeed, USAA described and continues to describe itself as "member-owned."

27.    Pursuant to USAA's by-laws, USAA members ("real members" as described herein) are entitled to:

      a.    Allocations of USAA's unassigned policyholder surplus (i.e., excess capital). Unassigned policyholder surplus currently exceeds $10 billion. Each member's allocation is recorded and remains in an individual member's account until six months after the expiration or cancellation of that member's last in-force policy. If the member does not take out a new policy from USAA during that 6-month period, the allocation amount is paid to the former member in cash in the form of a termination payment. The average individual assignment of policyholder surplus is believed to be in the range of $2000. For 2022, USAA paid $350 million in such termination payments.

      b.    Annual distributions from unassigned policyholder surplus as declared by the Board of Directors. For 2022, these annual distributions total $343 million. Those that have been members for more than 40 years receive an additional senior bonus which for 2022 totals $315 million.

28.    Before the late 1960's, USAA did not own or operate any of the stock insurance company subsidiaries.  Accordingly, a customer that purchased a USAA policy was necessarily a USAA member. Member status entitled that customer to a share of USAA's excess capital and

8

distributions from that excess capital. Indeed, it was that sense of common enterprise built upon a foundation of military fraternity that distinguished USAA from all other insurance companies.

29. In 1962, USAA amended its by-laws to allow it to organize wholly owned subsidiary companies. In 1968, USAA formed United Services Casualty Insurance Company, which was renamed USAA Casualty Insurance Company ("USAA-CIC") in 1970. In 1972, USAA formed USAA General Indemnity Company ("USAA-GIC"). These stock subsidiaries were originally formed to address regulatory challenges with USAA's reciprocal structure. Specifically, USAA-CIC was used for military officers in Ohio, Vermont, and New Hampshire. Related regulatory challenges in Ohio later necessitated the formation of USAA-GIC.

30. As U.S. involvement in the Vietnam War began to wind down in the early 1970s, USAA faced a stagnant or even shrinking customer base of military officers. To spur growth, USAA began marketing its insurance products to the adult children of USAA members in 1973. USAA placed the insurance contracts for those customers with its stock subsidiary USAA-CIC.

31. Facing a stagnant or shrinking customer base again in the wake of the end of the Cold War, USAA began marketing its insurance products to enlisted personnel in 1996. USAA placed the insurance contracts for those customers with USAA-GIC.

32. In 2003, USAA began marketing its insurance products to the adult children of enlisted personnel and grandchildren of officers. USAA placed the insurance contracts for those customers with Garrison.

33. In the early period of this expansion, USAA continued to refer to officers placed with USAA as members and granted them the benefits of USAA membership. By contrast, during this early period of expansion, enlisted personnel and others whose insurance contracts

9

USAA placed with one of its subsidiaries were simply referred to as customers. They were not referred to as members and were not granted the benefits of membership.

34. Eventually, USAA found that drawing such a clear and honest distinction between members and non-members was not good for business. Accordingly, USAA's Board of Directors adopted a resolution in 1986 fabricating the title "associate member" to be assigned to non-member customers whose insurance contracts USAA had placed with one of its stock subsidiaries. Although the title implied some membership-based relationship with USAA, this "associate membership" status came without any of the benefits of real USAA membership.

35. Under this arrangement real members held ownership rights in USAA and received their insurance directly from USAA. However, associate members had no ownership rights, and their insurance contracts were placed by USAA with one of its stock subsidiaries.

36. Around 2000, USAA decided to extinguish any transparency into its two-tiered customer structure. At that time, and continuing to this day, USAA stopped openly referring to enlisted personnel and military family member customers as "associate members" and started pervasively and uniformly using the terms "member" and "membership" freely across its platforms and communications to describe all customers without differentiating between real members (officers) and nominal (or "fake") members (enlisted personnel and military family members).

37. To this day, USAA solicits customers by representing eligibility criteria for USAA membership that include criteria for both real membership and nominal membership

without ever mentioning the existence of associate membership. For example, the following are

excerpts from USAA's current website:[2]







[2] https://www.usaa.com/, accessed May 1, 2024; https://www.usaa.com/join/get-started/?product=join-now&wa_ref=pub_home_mbrship_join_now, accessed May 1, 2024; and https://www.usaa.com/inet/wc/about_usaa_corporate_overview_history, accessed May 1, 2024.

38. Similarly, USAA issues each of its customers a "USAA Member Number." The USAA member number is the primary means by which USAA customers identify themselves in communications with the USAA organization.

39. USAA also uses its insurance policies to unfairly deceive and mislead nominal members into believing they are real members. For example, USAA's homeowners insurance form for use with both real and nominal members defines the term "member" as "the owner of the policy who is the person who meets all eligibility requirements for membership and whose membership number is shown in the Declarations of this policy." This definition when used with respect to nominal members unfairly and deceptively leads those nominal members to understand that if they own the policy and their membership number appears in the Declarations, they meet all eligibility requirements for membership and are therefore members.

40. USAA's most popular product is automobile insurance, generating more than $15 billion per year in premium payments. USAA's standard auto policy, issued by USAA to both real members and nominal members, provides, under the USAA name, address, and logo, that "[i]f this policy is issued by United Services Automobile Association ("USAA") … by purchasing this policy you are a member of USAA and are subject to its bylaws [and] the board of directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts…. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws." This provision when used with respect to nominal members unfairly and deceptively leads those nominal members to understand they are members of USAA with the right to participate in the annual allocation.

41. USAA also pervasively, prominently, and proudly asserts—including in mass marketing—it is "member owned." This leads nominal members—whom have been told and led to believe they are real members—to understand they have an ownership interest in USAA.

42. USAA's unfair scheme to mislead and deceive nominal members into believing they are real USAA members has thus been carried out by, *inter alia*:

    a. Concealing from nominal members their status as "associate members," which for decades has been a hidden, purely internal (i.e., within the company) term of distinction;

    b. Utilizing patently confusing language for nominal members that plainly connotes they are eligible as and are members;

    c. Issuing nominal members a USAA member number; and

    d. Designing its insurance contracts to falsely promise and reinforce the belief that nominal members are members.

**2. USAA and Its Subsidiary Insurers**

43. USAA is a reciprocal interinsurance exchange.

44. USAA-CIC, USAA-GIC, and Garrison are stock insurance companies and wholly owned subsidiaries of USAA.

45. The stock subsidiaries' insurance services are administered by USAA.

46. The stock subsidiaries' directors and executives are also USAA employees.

47. Through expense allocation to the stock subsidiaries, royalty payments, and corporate dividends, money generated by the stock subsidiaries flows up to USAA. The three stock subsidiaries are held as an investment on USAA's balance sheet with profits sent upstream to USAA (and therefore to real members in the form of annual allocations and distributions as

described herein). The stock subsidiaries (and their nominal member customers) exist to enhance the financial performance of USAA, which in turn generates more policyholder surplus that is then allocated and distributed to real members.

    a.  As of December 31, 2023, 34% of USAA's policyholder surplus (or more than $8.7 billion) is derived from the policyholder surplus of the stock subsidiaries.

    b.  As of December 31, 2023, the value of the stock subsidiaries represents 84% of USAA's unassigned policyholder surplus allocated to real members.

    48.  USAA's disparate treatment of nominal members and real members is also reflected in USAA's placement of nominal members' insurance contracts with specific stock insurance subsidiaries. Each of the four USAA insurance companies is used for a different segment of the military or their family members. USAA keeps for itself commissioned officers and senior non-commissioned officers in pay grades E-7 or higher (i.e., real USAA members). USAA places the insurance contracts of the adult children of real USAA members with USAA-CIC. USAA places the insurance contracts of enlisted personnel in pay grades E-1 through E-6 with USAA-GIC. USAA places the insurance contracts of military family members that are not placed with USAA-CIC (i.e., adult children of real members) with Garrison.

    49.  For 2023 alone, real USAA members received annual distributions from policyholder surplus of $938,366,124 and allocations from unassigned policyholder surplus of $10,409,661,922. USAA received a substantial percentage of those surplus funds (i.e., the funds allocated and distributed to real members) from nominal members via those nominal members' premium payments.

    50.  By contrast, nominal members received no cash distribution from or allocation of policyholder surplus, with the lone exception that USAA-CIC declared a very small dividend

that was about one-tenth of the annual distribution to real members. USAA-GIC and Garrison

declared no dividend at all.

## CLASS ALLEGATIONS

51. Plaintiffs bring this action both individually and as a class action, under Federal

Rule of Civil Procedure 23(a), (b)(2), and (b)(3), on behalf of themselves and the following

Classes.

52. The Breach of Contract Class is defined as:

All purchasers of one or more USAA insurance contracts placed with USAA-CIC,
USAA-GIC, or Garrison where at least one such insurance contract included a
policy containing the following provision or a substantially similar provision –

"If this policy is issued by United Services Automobile Association
("USAA"), ... [b]y purchasing this policy you are a member of USAA and
are subject to its bylaws."

53. The Arizona Class, is defined as:

All purchasers of one or more USAA property and casualty insurance products in
the State of Arizona placed with USAA-CIC, USAA-GIC, or Garrison.

54. The California Class, is defined as:

All purchasers of one or more USAA property and casualty insurance products in
the State of California placed with USAA-CIC, USAA-GIC, or Garrison.

55. The Illinois Class, is defined as:

All purchasers of one or more USAA property and casualty insurance products in
the State of Illinois placed with USAA-CIC, USAA-GIC, or Garrison.

56. The New Jersey Class, is defined as:

All purchasers of one or more USAA property and casualty insurance products in
the State of New Jersey placed with USAA-CIC, USAA-GIC, or Garrison.

57. **Ascertainability**. The proposed Classes are readily ascertainable because they are

defined using objective criteria, so as to allow class members to determine if they are part of the

Classes. Further, the members can be readily identified through records and information in Defendants' possession, custody or control. For example, USAA records and retains in its systems customers' names and contact information, USAA member number, state of residence, and company of placement for each of its customers.

58. **Numerosity**. The Classes are so numerous and geographically dispersed that joinder of individual members is impracticable. The exact numbers of members of the Classes, as herein identified and described, are not known to Plaintiffs at this time and can only be ascertained through appropriate discovery, but Plaintiffs estimate that there are millions of customers in the Breach of Contract Class and hundreds of thousands of customers in each of the State Classes.

59. **Commonality and Predominance**. Common questions of fact and law exist for each cause of action and predominate over questions solely affecting individual members of the Classes, including the following:

a. Whether Defendants' conduct as described herein constitutes a breach of contract as to Plaintiffs and the members of the Breach of Contract Class;

b. Whether Defendants' conduct as described herein violates Arizona's Consumer Fraud Act and Unfair Insurance Practices Act;

c. Whether Defendants' conduct as described herein constitutes a violation of the California Unfair Competition Law;

d. Whether Defendants' conduct as described herein constitutes a violation of the Illinois Consumer Fraud Act;

e. Whether Defendants' conduct as described herein constitutes a violation of New Jersey's Consumer Protection Act;

16

60. **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Classes. Plaintiffs and the members of the Classes sustained damages arising out of Defendants' common course of conduct as described herein and their claims arise under the same legal theories.

61. **Adequacy**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the members of the Classes. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the other members of the Classes. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel has any interest adverse to those of the other members of the Classes.

62. **Superiority**. Class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members is impracticable. Trial of this case on a class basis will be manageable. Plaintiffs know of no special difficulty to be encountered in the maintenance of the action that would preclude its maintenance as a class action.

63. The elements of Rule 23(b)(2) are also met. Absent injunctive relief, Defendants will continue to commit the violations alleged herein. USAA has acted on grounds that apply generally to members of the Classes so that preliminary and/or final injunctive relief and corresponding declaratory relief is appropriate respecting the Classes as a whole.

## FIRST CAUSE OF ACTION
### Breach of Contract
### (On Behalf of the Breach of Contract Class)

64.     Plaintiffs, on behalf of themselves and the Breach of Contract Class, re-allege and incorporate by reference paragraphs 1 to 63 as if fully stated herein.

65.     Plaintiffs and the putative Breach of Contract Class members each entered into automobile insurance contracts with Defendants.

66.     The pertinent provisions of the USAA automobile insurance contracts entered into by Plaintiffs and the putative Breach of Contract Class are the same or materially the same.

67.     Defendants' automobile insurance contracts with Plaintiffs and the putative Breach of Contract Class members consist of three component parts: (a) the policy to which USAA typically assigns form number 5100 or AUT5200; (b) the Declarations page to which USAA typically assigns form number 5000 or AUT5000; and (c) any applicable endorsements. USAA articulates this three-part contractual structure in the first sentence of its from automobile insurance policy (applicable to Plaintiffs and all putative Breach of Contract Class members) which states:

> The automobile insurance contract between the named insured and the company shown on the Declarations page consists of this policy plus the Declarations page and any applicable endorsements.

68.     The automobile insurance contract that USAA delivered to each of the Plaintiffs and putative Breach of Contract Class members further states that if the policy (i.e., the first component of the contract) is issued by USAA, then the named insured is: (a) a member of USAA and subject to its bylaws; (b) entitled to an allocation of a portion of USAA's surplus; and (c) entitled to a distribution of that allocation following termination of membership. Specifically, the policy states:

18

"If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

- By purchasing this policy you are a member of USAA and are subject to its bylaws.

        ....

- The board of directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws."

69.     With respect to each of the Plaintiffs and putative Breach of Contract Class members, the policy, as defined by USAA in the automobile insurance contract, was issued by USAA. Among other things, the heading of the policy expressly identifies USAA as the issuer. For example, the heading of the auto policies issued to Plaintiffs Capps and Gutierrez provide in relevant part:



**USAA**
9800 Fredericksburg Road
San Antonio, Texas 78288

## TEXAS AUTO POLICY

**READ YOUR POLICY, DECLARATIONS AND ENDORSEMENTS CAREFULLY**

The automobile insurance contract between the named insured and the company shown on the Declarations page consists of this policy plus the Declarations page and any applicable endorsements. The Quick Reference section outlines essential information contained on the Declarations and the major parts of the policy.

**The policy provides the coverages and amounts of insurance shown on the Declarations for which a premium is shown.**

This is a participating policy. You are entitled to dividends as may be declared by the company's board of directors.

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

- By purchasing this policy you are a member of USAA and are subject to its bylaws.

- This is a non assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended.

- The board of directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

20

Similarly, the auto policy issued to Plaintiff Persaud provides in relevant part:



# ARIZONA
# AUTO POLICY

## READ YOUR POLICY, DECLARATIONS AND ENDORSEMENTS CAREFULLY

The auto insurance contract between the named insured and the company shown on the Declarations page consists of this policy plus the Declarations page and any applicable endorsements. The Quick Reference section outlines essential information contained on the Declarations and the major parts of the policy.

**The policy provides the coverages and amounts of insurance shown on the Declarations for which a premium is shown.**

This is a participating policy. You are entitled to dividends as may be declared by the board of directors.

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

- By purchasing this policy you are a member of USAA and are subject to its bylaws.
- This is a non-assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended.
- The board of directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

Similarly, the auto policy issued to Plaintiff Guerrero provides in relevant part:



**USAA**
9800 Fredericksburg Road
San Antonio, Texas 78288

---

## CALIFORNIA AUTO POLICY

---

**READ YOUR POLICY, DECLARATIONS AND ENDORSEMENTS CAREFULLY**

The automobile insurance contract between the named insured and the company shown on the Declarations page consists of this policy plus the Declarations page and any applicable endorsements. The Quick Reference section outlines essential information contained on the Declarations and the major parts of the policy.

**The policy provides the coverages and amounts of insurance shown on the Declarations for which a premium is shown.**

This is a participating policy. You are entitled to dividends as may be declared by the board of directors.

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

• By purchasing this policy you are a member of USAA and are subject to its bylaws.

• This is a non-assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended.

• The board of directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

Similarly, the auto policy issued to Plaintiff Ramos provides in relevant part:

 **USAA®**

**ILLINOIS
AUTO POLICY**

**READ YOUR POLICY, DECLARATIONS AND ENDORSEMENTS CAREFULLY**

The automobile insurance contract between the named insured and the company shown on the Declarations page consists of this policy plus the Declarations page and any applicable endorsements. The Quick Reference section outlines essential information contained on the Declarations and the major parts of the policy.

**The policy provides the coverages and amounts of insurance shown on the Declarations for which a premium is shown.**

This is a participating policy. You are entitled to dividends as may be declared by the board of directors.

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

- By purchasing this policy you are a member of USAA and are subject to its bylaws.

- This is a non-assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended.

- The board of directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

Similarly, the auto policy issued to Plaintiff Galarza provides in relevant part:



**USAA**
9800 Fredericksburg Road
San Antonio, Texas 78288

## NEW JERSEY STANDARD AUTO POLICY

**READ YOUR POLICY, DECLARATIONS AND ENDORSEMENTS CAREFULLY**

The automobile insurance contract between the named insured and the company shown on the Declarations page consists of this policy plus the Declarations page and any applicable endorsements The Quick Reference section outlines essential information contained on the Declarations and the major parts of the policy

**The policy provides the coverages and amounts of insurance shown on the Declarations for which a premium is shown.**

This is a participating policy You are entitled to dividends as may be declared by the board of directors

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply

- By purchasing this policy you are a member of USAA and are subject to its bylaws.

- This is a non-assessable policy You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended

- The board of directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws

24

70.     No other issuer is identified in the auto policies delivered to the Plaintiffs, and no other insurance company name or logo appears in those auto policies (as Defendants use the term "policy" in the automobile insurance contract).

71.     By contrast, Defendants identify that the Declarations and certain endorsements contained in the automobile insurance contract are issued, at least in part, by one of the stock subsidiaries. For example, Plaintiff Persaud's auto insurance contract identifies Garrison Property and Casualty Insurance as the issuer of the Declarations page:



Similarly, the Accident Forgiveness Endorsement in Plaintiff Persaud's auto insurance contract specifies the endorsement is issued by Garrison Property and Casualty Insurance Company.



72.     The automobile insurance contracts entered into by the putative Breach of Contract Class members are the same or materially the same as those of Plaintiffs.

73.     Accordingly, Defendants entered into contracts with Plaintiffs and the Breach of Contract Class through which Defendants promised them: (a) membership in USAA together with the rights and obligations set forth in its bylaws; and (b) a share of the allocation of the

25

amount of policyholder surplus that is designated by USAA's Board of Directors as unassigned surplus.

74.     Defendants have breached these contractual obligations by withholding from Plaintiffs and the Breach of Contract Class: (a) membership in USAA; (b) their rights pursuant to the bylaws including the right to participate in the annual distribution from surplus of USAA as declared by the Board; (c) their right to an allocation of USAA's unassigned surplus, as unassigned surplus is designated by the Board; and (d) payment of that allocation upon termination of membership.

75.     Plaintiffs and the putative Breach of Contract Class members have performed all of their material obligations under their automobile insurance contracts or have been excused from any non-performance.

76.     As a result of the above breaches, Plaintiffs and the Breach of Contract Class have incurred actual damages in an amount to be proven at trial.  Plaintiffs, on behalf of themselves and the Breach of Contract Class, seek an order awarding them damages.

77.     Plaintiffs, on behalf of themselves and the Breach of Contract Class, also seek specific performance by Defendants of their contractual obligations described herein, and seek such other relief to which they may be entitled.

**SECOND CAUSE OF ACTION**
**Violation of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1521 et seq.**
**(On Behalf of the Arizona Class)**

78.     Plaintiff Persaud and the members of the putative Arizona Class re-allege and incorporate by reference paragraphs 1 to 77 as if fully set forth herein.

79.     Arizona's Consumer Fraud Act prohibits the use of "any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment,

suppression or omission of any material fact ... in connection with the sale or advertisement of any" service. *See* Ariz. Rev. Stat. Ann. § 44-1522(A); *id.* § 44-1521(5) (defining "merchandise" to include any services).

80.     By engaging in the wrongful conduct set forth herein, which has occurred in connection with the advertisement and sale of insurance policies and services, Defendants have violated and continue to violate section 44-1522(A) of the Arizona Consumer Fraud Act. Specifically, as alleged in this Complaint, Defendants have committed and continue to commit deceptive and unfair acts or practices by concealing, suppressing, or omitting material facts, including the fact that Plaintiff Persaud and the members of the putative Arizona Class are nominal (or associate) members that do not receive the economic benefits of real USAA membership.

81.     As set forth herein, through Defendants' contracts and communications, Plaintiff Persaud and the members of the putative Arizona Class were all exposed to the same, uniform omissions of material information, including at the point of purchase.

82.     Defendants' omissions relating to membership status were material because they were related and significant to the decision to purchase insurance from Defendants considering the nature and circumstances of the transaction.

83.     At all relevant times, Defendants intended for consumers, including Plaintiff Persaud and the members of the putative Arizona Class, to rely on their unfair and deceptive acts and omissions, and such consumers did rely thereon.

84.     As a proximate result of Defendants' unfair and deceptive conduct, Plaintiff Persaud and the members of the putative Arizona Class suffered actual damages as set forth herein, including by failing to receive the economic benefits of real USAA membership.

27

85.     Plaintiff Persaud, on behalf of himself and the members of the putative Arizona Class, seeks an order awarding them actual damages in an amount to be proven at trial and such other relief to which they may be entitled.

86.     Defendants' conduct described herein was wanton or reckless, showed spite or ill will, and/or demonstrated Defendants' reckless indifference to the interests of others. Therefore, Plaintiff Persaud, on behalf of himself and the members of the putative Arizona Class, also seeks an award of punitive damages.

**THIRD CAUSE OF ACTION**
**Violation of the Arizona Unfair Insurance Practices Act,**
**Ariz. Rev. Stat. Ann. § 20-441 et seq.**
**(On Behalf of the Arizona Class)**

87.     Plaintiff Persaud and the members of the putative Arizona Class re-allege and incorporate by reference paragraphs 1 to 86 as if fully set forth herein.

88.     Arizona's Unfair Insurance Practices Act prohibits misrepresentations and false or misleading statements concerning the sale or advertisement of an insurance policy, including misrepresenting the "the terms of any policy issued or to be issued or the benefits or advantages promised or the dividends or share of the surplus to be received." *See* Ariz. Rev. Stat. Ann. § 20-443(A).

89.     Defendants' conduct alleged in this Complaint constituted deceptive and misleading statements and omissions about Plaintiff Persaud's and the members of the putative Arizona Class' status as nominal (or associate) members, the nature of their relationship with USAA, the benefits or advantages promised, and/or the dividends or share of the surplus to be received, in violation of 20-443 of Arizona's Unfair Insurance Practices Act.

90.     As set forth herein, through Defendants' contracts and communications, Plaintiff Persaud and the members of the putative Arizona Class were all exposed to the same, uniform

misrepresentations and/or omissions of material information relating to their membership status, share of surplus, and benefits.

91.    Defendants' misrepresentations and omissions relating to membership status, share of surplus, and benefits were material because they were related and significant to the decision to purchase insurance from Defendants considering the nature and circumstances of the transaction.

92.    At all relevant times, Defendants intended for consumers, including Plaintiff Persaud and the members of the putative Arizona Class, to rely on their unfair and deceptive acts and misrepresentations and/or omissions, and such consumers did rely thereon.

93.    As a proximate result of Defendants' unfair and deceptive conduct, Plaintiff Persaud and the members of the putative Arizona Class suffered actual damages as set forth herein, including by failing to receive the economic benefits of full USAA membership.

94.    Plaintiff Persaud, on behalf of himself and the members of the putative Arizona Class, seeks an order awarding them actual damages in an amount to be proven at trial and such other relief to which they may be entitled.

95.    Defendants' conduct described herein was wanton or reckless, showed spite or ill will, and/or demonstrated Defendants' reckless indifference to the interests of others. Therefore, Plaintiff Persaud, on behalf of himself and the members of the putative Arizona Class, also seeks an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*)**
**(On Behalf of the California Class)**

96.    Plaintiff Guerrero and the members of the putative California Class re-allege and incorporate by reference paragraphs 1 to 95 as if fully set forth herein.

97.     Defendants' conduct alleged herein violates the "unfair," "fraudulent," and "unlawful" prongs of California's Unfair Competition Law (the "UCL"), codified at California Business and Professions Code §§ 17200, *et seq*.

98.     By their conduct alleged herein, Defendants have violated the "unfair" prong of the UCL, including without limitation by:

     a.  Designing and marketing their insurance products and/or services in a manner that conveyed eligibility for real USAA membership status to Plaintiff Guerrero and the California Class, whom USAA knew were only eligible for nominal (or associate) membership status, and then depriving Plaintiff Guerrero and the other members of the California Class the benefits of USAA membership;

     b.  Issuing Plaintiff Guerrero and the California Class Members  USAA member numbers; and

     c.  Designing insurance policies in a way that creates and/or reinforces consumers' belief they are real USAA members when Defendants know they are nominal members and will not receive the benefits of membership;.

99.     Defendants' conduct alleged herein is immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to Plaintiff Guerrero and the California Class. By their conduct alleged herein, Defendants have already improperly denied Plaintiff Guerrero and the California Class money and other valuable benefits in which such persons have a vested interest, including the economic benefits of real USAA membership. There is no utility to Defendants' conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm caused by Defendants' conduct alleged herein.

100.    Defendants' conduct alleged herein also violates California public policy, including as such policy is reflected in Cal. Civ. Code § 1750, *et seq.*, Cal. Civ. Code §§ 1709-1710, and California common law relating to contracts.

101.    By their conduct alleged herein, Defendants have also violated the "unlawful" prong of the UCL, including by breaching contractual promises in violation of California common law.

102.    By their conduct alleged herein, Defendants have violated the "fraudulent" prong of the UCL, including without limitation by:

    a.  Concealing, failing to disclose, and/or misrepresenting material information in communications with Plaintiff Guerrero and the California Class, including regarding their membership status and benefits;

    b.  Designing and marketing their insurance products and/or services in a manner that conveyed eligibility for real USAA membership status to Plaintiff Guerrero and the California Class, whom USAA knew were only eligible for nominal (or associate) membership status, and then depriving Plaintiff Guerrero and the other members of the California Class the benefits of USAA membership;

    c.  Distributing communications containing intentionally confusing language indicating that those who are only eligible for nominal (or associate) membership status are real USAA members and will receive the benefits of membership;

    d.  Issuing Plaintiff Guerrero and the California Class USAA member numbers; and

    e.  Designing insurance policies in a way that creates and/or reinforces consumers' belief they are real USAA members that will receive the benefits of membership

when Defendants know they are nominal members and will not receive the benefits of membership.

103.    With respect to concealment/omissions, Defendants at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendants had exclusive knowledge of material information that was not known and not reasonably available to Plaintiff Guerrero and the California Class; (b) Defendants concealed material information from Plaintiff Guerrero and the California Class; and (c) Defendants made partial representations, including regarding supposed "membership," which were false and misleading absent the omitted information.

104.    Defendants' material misrepresentations and nondisclosures were likely to mislead reasonable consumers and the public.

105.    Defendants' misrepresentations and nondisclosures deceive and have a tendency to deceive the general public and reasonable consumers.

106.    Defendants' misrepresentations and nondisclosures are material, such that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

107.    Plaintiff Guerrero and members of the proposed California Class reasonably relied on Defendants' material misrepresentations and nondisclosures, which impacted their purchase and insurance decisions. Had they known the truth, they would have acted differently and/or would have been willing to pay less for their insurance.

108.    As a result of Defendants' conduct alleged herein, Plaintiff Guerrero and the California Class paid more money and were denied money and other benefits that they had a

vested interest in, including the benefits of real USAA membership. Such money and benefits are subject to restitution.

109.    As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent conduct, Plaintiff Guerrero and the proposed California Class lost money.

110.    Defendants' conduct has caused substantial injury to Plaintiff Guerrero, putative California Class members, and the public. Defendants' conduct is ongoing and is likely to continue and recur absent a permanent injunction. Accordingly, Plaintiff Guerrero seeks an order enjoining Defendants from committing such unlawful, unfair, and fraudulent business practices. Plaintiff Guerrero further seeks an order granting restitution to himself and the California Class in an amount to be proven at trial. Plaintiff Guerrero further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

111.    Plaintiff Guerrero and the California Class lack an adequate remedy at law to recover or fully recover amounts and benefits subject to restitution pursuant to this cause of action and to obtain or fully obtain the requested injunctive relief pursuant to this cause of action.

### FIFTH CAUSE OF ACTION
#### Violation of the Illinois Consumer Fraud Act
#### (On Behalf of the Illinois Class)

112.    Plaintiff Ramos and the members of the putative Illinois Class re-allege and incorporate by reference paragraphs 1 to 111 as if fully set forth herein.

113.    The Illinois Consumer Fraud Act prohibits the use of "unfair and deceptive acts or practices" in the advertising, offering, selling, or distribution of any services. *See* 815 Ill. Comp. Stat. Ann. 505/2; *id.* § 1(f).

114.    Plaintiff Ramos and the members of the putative Illinois Class are persons and consumers under the Illinois Consumer Fraud Act. *See* 815 Ill. Comp. Stat. Ann. 505/1(c); *id.* §

1(e). Plaintiff Ramos and the members of the putative Illinois Class purchased insurance from Defendants in Illinois.

115.    As set forth herein, Defendants have committed and continue to commit numerous unfair and deceptive business acts and practices, including, but not limited to:

   a.   Concealing, failing to disclose, and/or misrepresenting material information in communications with Plaintiff Ramos and the Illinois Class, including regarding their membership status and benefits;

   b.   Designing and marketing their insurance products and/or services in a manner that conveyed eligibility for real USAA membership status to Plaintiff Ramos and the Illinois Class, whom USAA knew were only eligible for nominal (or associate) membership status and then depriving Plaintiff Ramos and the other members of the Illinois Class the benefits of USAA membership;

   c.   Distributing communications containing intentionally confusing language indicating that those who are only eligible for nominal (or associate) membership status are real USAA members and will receive the benefits of membership;

   d.   Issuing Plaintiff Ramos and the Illinois Class USAA member numbers; and

   e.   Designing insurance policies in a way that creates and/or reinforces consumers' belief they are real USAA members that will receive the benefits of membership when Defendants know they are nominal members and will not receive the benefits of membership.

116.    Defendants' business practices set forth herein constitute unfair practices because:

a.  They offend the public policy of prohibiting the misrepresentation of policy terms and an insurance policy's benefits and advantages, *see* 215 Ill. Comp. Stat. Ann. 5/149;

b.  They are immoral, unethical, oppressive, and/or unscrupulous, given that they leave consumers with little to no alternative except to submit to being relegated to associate membership status; and/or

c.  They cause substantial injury to consumers that is not outweighed by any of the business practices' countervailing benefits to consumers or competition, and consumers could not have reasonably avoided the injury because Defendants prevented from anticipating the injury and/or unjustifiably hampered consumers' ability to make free market decisions by concealing and/or misrepresenting material facts.

117.    At all relevant times, Defendants were aware that the information about membership status and benefits that Defendants concealed, failed to disclose, and/or misrepresented was material and the type of information on which a consumer would rely when deciding to purchase insurance from Defendants.

118.    At all relevant times, Defendants intended for consumers, including Plaintiff Ramos and the members of the putative Illinois Class, to rely on their unfair acts and deception, which occurred in a course of conduct involving trade and/or commerce, and such consumers did rely thereon.

119.    At all relevant times, Defendants had actual knowledge that the information about USAA membership and benefits that they communicated to those only eligible for nominal membership status was false, misleading, and/or deceptive.

120.    As set forth herein, Defendants employed the same unfair and deceptive business practices with respect to Plaintiff Ramos and the members of the putative Illinois Class.

121.    As a direct and proximate result of Defendants' unfair and deceptive conduct, Plaintiff Ramos and the members of the putative Illinois Class suffered actual damages as set forth herein, including by failing to receive the economic benefits of real USAA membership.

122.    Plaintiff Ramos, on behalf of himself and the members of the putative Illinois Class, seeks an order awarding them actual damages, attorneys' fees, and costs; an order enjoining Defendants from engaging in the misconduct alleged herein in the future; and such other orders and judgments that may be necessary. *See* 815 Ill. Comp. Stat. Ann. 505/10a.

123.    Plaintiff Ramos, on behalf of himself and the and the members of the putative Illinois Class, also seeks an award of punitive damages to the extent warranted by Defendants' conduct described herein.

### SIXTH CAUSE OF ACTION
### Violation of New Jersey's Consumer Fraud Act,
### N.J. Stat. Ann. § 56:8-1 *et seq.*
### (On Behalf of the New Jersey Class)

124.    Plaintiff Miguel Galarza and the members of the putative New Jersey Class re-allege and incorporate by reference paragraphs 1 to 123 as if fully set forth herein.

125.    New Jersey's Consumer Fraud Act ("CFA") prohibits the use by any person of "any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. Ann. § 56:8-2.

126.    Plaintiff Galarza and the members of the putative New Jersey Class, and Defendants are all "persons" under New Jersey's CFA .

127.    At all relevant times herein, Defendants were engaged in the "sale" and "advertisement" of "merchandise" under New Jersey's CFA through their marketing and sale of insurance and insurance products to consumers.

128.    As set forth herein, Defendants have engaged in unlawful conduct under the CFA by:

    a. Concealing, failing to disclose, and/or misrepresenting material information in communications with Plaintiff Galarza and the New Jersey Class, including regarding their membership status and benefits;

    b. Designing and marketing their insurance products and/or services in a manner that conveyed eligibility for real USAA membership status to Plaintiff Galarza and the New Jersey Class, whom USAA knew were only eligible for nominal (or associate) membership status, and then depriving Plaintiff Galarza and the other members of the New Jersey Class the benefits of USAA membership;

    c. Distributing communications containing intentionally confusing language indicating that those who are only eligible for nominal (or associate) membership status are real USAA members and will receive the benefits of membership;

    d. Issuing Plaintiff Galarza and the New Jersey Class USAA member numbers; and

    e. Designing insurance policies in a way that creates and/or reinforces consumers' belief they are real USAA members that will receive the benefits of membership when Defendants know they are nominal members and will not receive the benefits of membership.

129.    At all relevant times, Defendants were aware that the information about membership status and benefits that Defendants concealed, suppressed, failed to disclose, and/or misrepresented was material and the type of information on which a consumer would rely when deciding to purchase insurance from Defendants.

130.    At all relevant times, Defendants had actual knowledge that the information about USAA membership and benefits that they communicated to those only eligible for nominal membership status was false, misleading, and/or deceptive.

131.    At all relevant times, Defendants intended for consumers, including Plaintiff Galarza and the members of the putative New Jersey Class, to rely on their material misrepresentations, concealments, suppressions, and/or omissions, which occurred in connection with Defendants' sale and advertisement of insurance to consumers, and such consumers did rely thereon.

132.    Defendants' material misrepresentations, omissions, and/or nondisclosures impacted Plaintiff Galarza's and the members of the putative New Jersey Class's purchase and insurance decisions. Had they known the truth, they would have acted differently and/or would have been willing to pay less for insurance with Defendants.

133.    As a direct and proximate result of Defendants' unlawful conduct under the CFA, Plaintiff Galarza and the members of the putative New Jersey Class have suffered ascertainable economic losses as set forth herein in amount to be determined at trial. Among others, these losses included paying more money and being denied money and other benefits they had a vested interest in, including the economic benefits of real USAA membership. Without Defendants' unlawful conduct under the CFA, Plaintiff Galarza and the members of the putative New Jersey Class would not have sustained their ascertainable economic losses.

38

134.    Plaintiff Galarza, on behalf of himself and the members of the putative New Jersey Class, seeks an order awarding them actual damages, threefold actual damages, attorneys' fees, and costs, an order enjoining Defendants from engaging in the misconduct alleged herein in the future, and such other orders and judgments that may be necessary. *See* N.J. Stat. Ann. § 56:8-19.

## PRAYER FOR RELIEF

135.    WHEREFORE, the Plaintiffs request the Court enter judgement in their favor and in favor of the members of the Classes, against the Defendants as follows:

      a.  Finding this action satisfies the prerequisites for maintenance as class action under Federal Rule of Civil Procedure 23 and certifying the Classes defined herein;

      b.  Designating Plaintiffs as representatives of the respective Classes and their counsel as class counsel to each;

      c.  Declaring Defendants' practices described above to constitute breach of contract as to Plaintiffs and the Breach of Contract Class;

      d.  Declaring Defendants' practices described above to constitute violations of the Arizona, California, Illinois, Texas, and New Jersey consumer protection statutes alleged herein;

      e.  Ordering specific performance by Defendants of their contractual obligations as to Plaintiffs and the Breach of Contract Class;

      f.  Permanently enjoining Defendants from engaging in the misconduct alleged herein;

g.  Granting equitable relief to the Plaintiffs and members of the Classes, including disgorgement of, restitution of, and/or imposing a constructive trust upon the ill-gotten gains derived by Defendants;

h.  Awarding the Plaintiffs and members of the Classes actual and compensatory damages;

i.  Awarding the Plaintiffs and members of the Classes punitive damages, exemplary damages, special damages, treble damages, and triple damages, as applicable;

j.  Awarding pre-judgment and post-judgment interest;

k.  Awarding reasonable attorney's fees;

l.  Granting such further injunctive or other relief to which Plaintiffs and the Classes are entitled and as the Court deems just.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

[Signature Block on Succeeding Page]

Dated: May 3, 2024

Respectfully submitted,

/s/ _____

Roger N. Heller
(*Pro hac vice* filed herewith)
rheller@lchb.com
Nimish R. Desai
(District admission pending and *Pro hac vice* filed herewith)
Texas Bar No. 24105238
ndesai@lchb.com
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
(415) 956-1000

Michael P. Thornton
(*Pro hac vice* forthcoming)
mthornton@tenlaw.com
David J. McMorris
(*Pro hac vice* forthcoming)
dmcmorris@tenlaw.com
Christian Uehlein
(*Pro hac vice* forthcoming)
cuehlein@tenlaw.com
THORNTON LAW FIRM, LLP
84 State Street, 4th Floor
Boston, MA 02109
(617) 720-1333

Michael J. Brickman
(*Pro hac vice* forthcoming)
mbrickman@rpwb.com
James C. Bradley
(*Pro hac vice* forthcoming)
jbradley@rpwb.com
Nina Fields Britt
(*Pro hac vice* forthcoming)
nfields@rpwb.com
Caleb M. Hodge
(*Pro hac vice* forthcoming)
chodge@rpwb.com
ROGERS, PATRICK, WESTBROOK &
BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg. A (29464)

Post Office Box 1007
Mount Pleasant, SC 29465
Phone: (843) 727-6500